STATE OF CONNECTICUT *v.* LEOTIS PAYNE
(SC 17965)

Rogers, C. J., and Palmer, Zarella, McLachlan, Eveleigh, Harper and Vertefeuille, Js.*

---

* This case was originally argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, McLachlan and Eveleigh and

Senior Justice Vertefeuille. Thereafter, Justices Zarella and Harper were added to the panel and they have read the record, briefs and transcript of oral argument.

Argued September 21, 2011—officially released January 24, 2012

*G. Douglas Nash*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Kevin C. Doyle*, senior assistant state's attorney, and *Stacey M. Haupt*, assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Leotis Payne, appeals[1] from the judgments of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), carrying a pistol without a permit in violation of General Statutes § 29-35, criminal possession of a firearm in violation of General Statutes (Rev. to 1993) § 53a-217, attempt to tamper with a juror in violation of General Statutes §§ 53a-49 (a) (2) and 53a-154, and conspiracy to tamper with a juror in violation of General Statutes §§ 53a-48 (a) and 53a-154. On appeal, the defendant claims that the trial court improperly: (1) joined the two cases against the defendant for trial; (2) admitted the testimony of one of the state's witnesses regarding an alleged threat made by the defendant; and (3) denied the defendant's motion for a new trial on the basis of prosecutorial impropriety. In affirming the judgments of the trial court, we also take this opportunity to overrule *State* v. *King*, 187 Conn. 292, 445 A.2d 901

---

[1] The defendant appealed from the judgments directly to this court pursuant to General Statutes § 51-199 (b) (3).

(1982), and its progeny, which recognized a presumption in favor of joinder in criminal cases.

The following factual and procedural history is relevant to this appeal. In connection with a deadly shooting in New Haven in 1994, the defendant was charged by information with felony murder, robbery in the first degree, larceny in the second degree, carrying a pistol without a permit, and criminal possession of a firearm. Following a jury trial, the defendant was convicted of all charges. On appeal, the Appellate Court affirmed the judgment of conviction; *State* v. *Payne*, 63 Conn. App. 583, 596, 777 A.2d 731 (2001); and this court thereafter reversed the judgment of the Appellate Court and remanded the case for a new trial after finding that certain prosecutorial improprieties had deprived the defendant of a fair trial. *State* v. *Payne*, 260 Conn. 446, 466, 797 A.2d 1088 (2002).

During jury selection on remand in 2006, the trial court declared a mistrial after the defendant was charged in a separate information with attempt to tamper with a juror, and conspiracy to tamper with a juror. Following the mistrial, the state sought to retry the defendant on the charges in the felony murder case, and filed a motion to join that case with the jury tampering case for trial. The motion was granted and the cases were consolidated for trial. The defendant was convicted of all of the charged offenses, and the court imposed a total effective sentence of sixty-seven years incarceration. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the trial court improperly joined the felony murder and jury tampering cases for trial. The defendant claims that joinder was improper under the test articulated by this court in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529

A.2d 1260 (1987).[2] The state responds that the trial court properly examined the factors set forth in that opinion.[3] After reviewing the evidence presented at the joint trial, we conclude that the cases were improperly joined, but the impropriety was harmless.

"The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19

[2] In *State* v. *Boscarino*, supra, 204 Conn. 723, this court applied three factors to determine whether joinder was proper: (1) whether the "factual similarities . . . [although] insufficient to make the evidence in each case substantively admissible at the trial of the others, were significant enough to impair the defendant's right to the jury's fair and independent consideration of the evidence in each case"; (2) whether "[t]he prejudicial impact of joinder in these cases was exacerbated by the violent nature of the crimes with which the defendant was charged . . . [giving] the state the opportunity to present the jury with the intimate details of each of these offenses, an opportunity that would have been unavailable if the cases had been tried separately"; and (3) whether "[t]he duration and complexity of the trial also enhanced the likelihood that the jury would weigh the evidence against the defendant cumulatively, rather than independently in each case."

[3] The state also claims that the joinder of the cases can be affirmed because the evidence in the two cases was cross admissible. Specifically, the state asserts that evidence of jury tampering was admissible to show consciousness of guilt in the felony murder case. We disagree with the state, and conclude that it would be inappropriate to affirm on the basis of cross admissibility where, as here, the trial court did not admit the evidence for consciousness of guilt, and neglected to instruct the jurors regarding impermissible inferences that could be drawn from joinder of the two cases, such as inferring the defendant's propensity to commit crime. If the parties had been permitted to use the evidence for cross admissible purposes at trial, the trial court would have needed to instruct the jury regarding inferences that could not be drawn from such evidence. See J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.25, p. 68 (when evidence of prior misconduct is admitted, jury "may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity").

In addition, if the cases had been joined due to cross admissibility, the defendant should have been given an opportunity to negate the inference of consciousness of guilt in the felony murder case when he testified at trial, an opportunity that the defendant in the present case was denied. See *State* v. *Lugo*, 266 Conn. 674, 692, 835 A.2d 451 (2003) (evidence of defendant's state of mind is relevant and admissible to rebut state's claim of consciousness of guilt).

provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"Substantial prejudice does not necessarily result from [joinder] even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"Despite the existence of these risks, this court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second

guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . .

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 27–29, 942 A.2d 373 (2008).

In the present case, the defendant contends that the trial court improperly concluded that joinder was proper under *Boscarino*. The defendant also urges us to overrule this court's decision in *State* v. *King*, supra, 187 Conn. 299, which established the foundation for the presumption in favor of joinder. Because the presumption presents a threshold issue in our discussion of joinder, we first address the defendant's claim regarding *King*.

In *King*, the defendant claimed that pursuant to General Statutes § 54-57,[4] only offenses of the "same character" may be joined for trial. *State* v. *King*, supra, 187

---

[4] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

Conn. 298. In resolving this claim, this court noted that the rule of practice on joinder, now codified at Practice Book § 41-19,[5] had been amended to omit "reference to the requirement that the offenses joined be of the 'same character.'" Id., 296. This court therefore concluded that Practice Book § 41-19 "intentionally broadened the circumstances under which two or more indictments or informations could be joined [for trial],"[6] and that "whether the offenses are of the 'same character' [was] no longer essential." Id. This court then concluded that § 54-57 and Practice Book § 41-19 conflicted, stating: "We must therefore determine whether joinder is controlled by the statute or the rule." Id., 297. We ultimately concluded that, because Practice Book § 41-19 was "a rule which regulate[d] court proce-

[5] For clarity, when discussing the relevant rule of practice, we refer exclusively to Practice Book § 41-19, which provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

When *King* was decided, Practice Book § 41-19 was codified at Practice Book (1978–97) § 829. In *King*, we were asked to compare Practice Book (1978–97) § 829 with its predecessor, Practice Book (1963) § 492. A brief history of the rule reveals that "[§] 492 of the 1963 Practice Book . . . provided: Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise. . . . In 1976, the rule . . . was amended to read as follows: The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together." (Internal quotation marks omitted.) *State* v. *King*, supra, 187 Conn. 296. Practice Book (1978–97) § 829 was then renumbered Practice Book § 41-19 in 1998, but remained substantively unchanged.

[6] Although we did not use the words "for trial" in *King*, that case involved joinder of multiple informations *for trial*, rather than joinder of multiple charges *in an information*. See *State* v. *King*, supra, 187 Conn. 293–95 ("The defendant was charged with burglary . . . and larceny . . . . *In a separate information*, the defendant was also charged with possession of heroin and cocaine . . . . Prior to trial, the state was granted . . . a motion for joinder of the two informations, pursuant to Practice Book [§ 41-19], and the matters were tried together." [Emphasis added.]).

dure and facilitate[d] the administration of justice and [did] not infringe on any substantive right," the rule of practice, rather than § 54-57, governed the trial court's decision on a motion for joinder. Id., 298.

The defendant contends that this court's conclusion in *King* that Practice Book § 41-19 prevailed over § 54-57 is untenable because the rule of practice is substantive, not procedural, in nature. Even if Practice Book § 41-19 is procedural, the defendant further claims that General Statutes § 51-14 "did not empower the courts to overrule a constitutional statute purely for procedural or facilitative reasons." In the alternative, the defendant urges us to overrule *King* to the extent that it laid the foundation for a presumption in favor of joinder, to which we have adhered in the years since that decision.[7] After considering these arguments, we agree that *King* should be overruled to the extent that it is inconsistent with the plain language of the provisions at issue. We therefore will no longer adhere to the blanket presumption in favor of joinder.

Although we conclude that Practice Book § 41-19 applies to the joinder of cases for trial, it is now clear to us that, contrary to our conclusion in *King*, § 54-57 and Practice Book § 41-19 do not conflict with one another. Rather, the plain language of these provisions indicates that they apply to two different situations. Section 54-57 is directed at prosecutors, and governs the circumstances under which they may join multiple charges in a single information. Practice Book § 41-19, on the other hand, is directed at trial courts, and governs the joinder of multiple informations for trial. Consequently, Practice Book § 41-19 applied in *King*, not

---

[7] Although this court did not specifically employ the term "presumption" in *King*, subsequent case law consistently employed this terminology. See, e.g., *State* v. *Gupta*, 297 Conn. 211, 223, 998 A.2d 1085 (2010); *State* v. *Johnson*, 289 Conn. 437, 451, 958 A.2d 713 (2008); *State* v. *Davis*, supra, 286 Conn. 29.

because it trumped the statute, but because *King* involved the trial court's joinder of multiple informations for trial, rather than the prosecutor's joinder of multiple charges in a single information. *State* v. *King*, supra, 187 Conn. 293–95.

Moreover, we conclude that the blanket presumption in favor of joinder that developed in *King*'s wake; see, e.g., *State* v. *Johnson*, 289 Conn. 437, 451, 958 A.2d 713 (2008); *State* v. *Sanseverino*, 287 Conn. 608, 628, 949 A.2d 1156 (2008), overruled in part on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009); *State* v. *McKenzie-Adams*, 281 Conn. 486, 521, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007); is inappropriate and should no longer be employed. *King* laid the foundation for this presumption by stating, "[t]he discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant." (Internal quotation marks omitted.) *State* v. *King*, supra, 187 Conn. 299. In cases where the evidence cannot be used for cross admissible purposes, however, the blanket presumption in favor of joinder is inconsistent with the well established evidentiary principle restricting the admission of character evidence. As Justice Katz argued in her concurring opinion in *State* v. *Davis*, supra, 286 Conn. 38, the presentation of evidence of a defendant's previous crimes or misconduct is "inherently prejudicial unless that evidence would be legally relevant to the case on some other basis."[8]

---

[8] In *Davis*, the majority disagreed with the concurrence's repudiation of the liberal presumption in favor of joinder on the basis of this court's decision in *King*. *State* v. *Davis*, supra, 286 Conn. 26–27 n.6. Because the defendant in *Davis* did not ask the court to overrule *King*, we did not have occasion to address these arguments until now. Id.

The concurrence in *Davis* also noted that the blanket presumption failed to acknowledge that the interest in judicial economy weighs differently, depending upon whether the evidence in the cases joined for trial is cross admissible. Id., 43. "The argument for joinder is most persuasive when the offenses are based upon the same act or criminal transaction, since it seems unduly inefficient to require the state to resolve the same issues at numerous trials." (Internal quotation marks omitted.) Id., 43–44 (*Katz, J.*, concurring). In contrast, when the cases are not of the same character, the argument for joinder is far less compelling because the state must "prove each offense with separate evidence and witnesses [thus] eliminat[ing] any real savings in time or efficiency which might otherwise be provided by a single trial." (Internal quotation marks omitted.) Id., 44 (*Katz, J.*, concurring).

Accordingly, we now reject the blanket presumption in favor of joinder and establish the burden of proof concerning joinder at trial as follows: In the trial court, when multiple charges have already been joined in a single information by the state pursuant to § 54-57, and the defendant has filed a motion to sever the charges for trial pursuant to Practice Book § 41-18, the defendant bears the burden of proving that the offenses are not of the "same character"; General Statutes § 54-57; and therefore that the charges should be tried separately.[9] On the other hand, when charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant

[9] Because § 54-57 restricts prosecutors to joining multiple charges in a single information only when, in good faith, they find that the offenses were "of the same character," we are not concerned that prosecutors will do so in all cases in order to pass the burden on to the defendant.

to Practice Book § 41-19.[10] The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors.

We now apply these principles to the present case, in which the defendant claims that joinder of the two cases against him was improper under *Boscarino*.[11] Specifically, he claims that: (1) the charges did not involve discrete, easily distinguishable factual scenarios; (2) the felony murder case involved crimes of a violent nature and brutal conduct by the defendant when compared to the jury tampering case; and (3) the consolidated trial was too lengthy and complex to justify joinder.[12] The state responds that the trial court properly applied *Boscarino*. We agree with the state regarding the first and third *Boscarino* factors, and further conclude that, although the trial court improperly determined that the second factor was not present, joinder could not have substantially affected the verdict and therefore was harmless.

With respect to the first factor, the defendant claims that the jury tampering case was an "upsetting distrac-

---

[10] Because this rule of law pertains to the party bearing the burden of proof, it is procedural, and not substantive, and therefore will not apply retroactively in habeas proceedings. See *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 753–54, 12 A.3d 817 (2011); see also *Bousley* v. *United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("unless a new rule of criminal procedure is of such a nature that without [it] the likelihood of an accurate conviction is seriously diminished . . . there is no reason to apply the rule retroactively on habeas review" [citation omitted; internal quotation marks omitted]).

[11] Despite our reallocation of the burden when the trial court is faced with the question of joinder of cases for trial, the defendant's burden of proving error on appeal when we review the trial court's order of joinder remains the same. See *State* v. *Ellis*, 270 Conn. 337, 376, 852 A.2d 676 (2004) ("[i]t is the defendant's burden *on appeal* to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury" [emphasis added]).

[12] See footnote 2 of this opinion.

tion" to the jurors and that the events in the two cases were too intertwined for them to be joined. We disagree. The felony murder case involved the defendant's participation in a street crime in October, 1994. The jury tampering case, on the other hand, involved the defendant's attempt to tamper with jurors during his trial in December, 2006. Because the two cases were factually and temporally distinct, we conclude that the trial court did not abuse its discretion with respect to its conclusion regarding the first *Boscarino* factor. See *State* v. *Herring*, 210 Conn. 78, 96, 554 A.2d 686 (two killings that were not "strikingly similar" involved discrete factual scenarios), cert. denied, 492 U.S. 912, 109 S. Ct. 3232, 106 L. Ed. 2d 579 (1989); *State* v. *Barnes*, 127 Conn. App. 24, 41, 15 A.3d 170 (sales charge and possession charge stemming from conduct that occurred months apart were factually discrete), cert. granted, 300 Conn. 938, 17 A.3d 472 (2011).

The defendant next claims that the trial court improperly determined that the conduct alleged in the felony murder case was not so brutal or shocking as to require separate trials. We agree, and conclude that the trial court, even if adhering to the presumption in favor of joinder, abused its discretion with respect to its ruling on this factor. "Whether one or more offenses involved brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." *State* v. *Davis*, supra, 286 Conn. 29–30. In the felony murder case, the victim died after being shot at close range. In the jury tampering case, on the other hand, the defendant unsuccessfully attempted to contact several jurors in an effort to avoid conviction; no violence was involved. We would be hard pressed to find cases that, when joined, raise a more significant concern regarding the relative

levels of violence than the cases at issue here.[13] Because the defendant's conduct in killing the victim in the felony murder case was significantly more brutal and shocking than his conduct in attempting to tamper with the jurors, we conclude that the second *Boscarino* factor was present, and that the evidence from the felony murder case was prejudicial to the defendant with regard to the jury tampering case.

Finally, the defendant claims that the trial court abused its discretion in determining that the joint trial was neither unduly long nor complex. We disagree. The trial in this case lasted only two weeks, consisting of merely eight days of testimony and twenty-one witnesses. In *State* v. *Herring*, supra, 210 Conn. 97–98, we rejected a claim that a trial with eight days of testimony and twenty-three witnesses was unduly complex. Cf. *State* v. *Boscarino*, supra, 204 Conn. 723 (finding high likelihood that jury would weigh evidence cumulatively when trial lasted ten weeks); id., 723–24 (fifty-five witness trial too complex). We therefore conclude that the trial court did not abuse its discretion in finding that the joint trial was not unduly lengthy or complex.

Despite our conclusion that the cases were improperly joined for trial pursuant to the second *Boscarino* factor, we conclude that the error was harmless.[14] When

---

[13] The second *Boscarino* factor was present despite the defendant's admission that he was guilty of the jury tampering charges. The defendant's strategy at trial, in light of the joinder of the cases, was to confess to the jury tampering crimes in an effort to prove that he was testifying honestly when he denied committing the other crimes. Arguably then, the defendant might not have employed this strategy and confessed to the jury tampering charges if the two cases had been tried separately.

[14] The presence of only one *Boscarino* factor is necessary to prove prejudice. *State* v. *Davis*, supra, 286 Conn. 29 ("[i]f *any or all of these factors are present*, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred" [emphasis added; internal quotation marks omitted]); *State* v. *Randolph*, 284 Conn. 328, 338, 933 A.2d 1158 (2007) (same); *State* v. *Ellis*, 270 Conn. 337, 375, 852 A.2d 676 (2004) (same); *State* v. *Cassidy*, 236 Conn. 112, 133, 672 A.2d 899 (same), cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled

reviewing claims of error, we examine first whether the trial court abused its discretion, and, if so, we next inquire whether the error was harmless.[15] See *State* v. *Beavers*, 290 Conn. 386, 396–97, 963 A.2d 956 (2009). When an error is not of constitutional magnitude, the defendant bears the burden of demonstrating that the error was harmful. *State* v. *Osimanti*, 299 Conn. 1, 18, 6 A.3d 790 (2010). The proper standard for review of a defendant's claim of harm is "whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., 18–19. We conclude that the defendant did not prove harm in the present case.

The record reveals that, during voir dire, the trial court instructed the potential jurors that, although the cases had been joined for judicial economy, the jurors, if called upon to serve, must "treat each and every case

on other grounds by *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000). Accordingly, a defendant may challenge his conviction based on the presence of only one of the factors. See *State* v. *Davis*, supra, 29 and n.7 (challenging propriety of Appellate Court's conclusion on basis of second *Boscarino* factor only); *State* v. *Ellis*, supra, 376 (limiting analysis to second, and only, *Boscarino* factor addressed by defendant); *State* v. *Virgo*, 115 Conn. App. 786, 796, 974 A.2d 752 (2009) (defendant did not argue that second or third *Boscarino* factors were not satisfied, and, therefore, court addressed them only briefly), cert. denied, 293 Conn. 923, 980 A.2d 914 (2009).

[15] Prior cases involving joinder have neither expressly renounced nor invoked this two step inquiry. Having rejected the presumption in favor of joinder and reallocated the burden of proof to the state, however, it is now necessary for us specify that our usual inquiry for review of nonconstitutional claims of error applies in cases involving joinder. See, e.g., *State* v. *Osimanti*, supra, 299 Conn. 18 ("[w]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case" [internal quotation marks omitted]).

separately . . . ." The court expanded upon this warn-
ing multiple times throughout the trial, including after
the jury was impaneled,[16] during the state's presentation
of evidence,[17] and in its final charge.[18] These instructions
helped to cure the error by informing the jurors that
the brutal nature of the conduct alleged in the felony
murder case could not be used to infer the defendant's
guilt in the jury tampering case.[19]

In addition, we conclude that the defendant failed to
demonstrate that the error substantially affected the
verdict in light of the strength of the state's evidence in
the jury tampering case. Even excluding the defendant's
confession to jury tampering; see footnote 13 of this
opinion; the state's evidence included prison tape
recordings of telephone conversations between the
defendant and Carol Evans, with whom the defendant
conspired in the jury tampering case. In those telephone
conversations, the defendant discussed his plan to tam-
per with the jury, and asked Evans about her attempts
to do so on his behalf. On this basis, we conclude that
the error regarding the second *Boscarino* factor was
ultimately harmless.

## II

We next review the defendant's claim that the trial
court abused its discretion when, during redirect exami-

---

[16] Prior to presentment of any evidence, the trial judge stated: "I told you
upon voir dire that I have joined two cases for trial, two informations, and
the fact that there are two cases here as opposed to one has absolutely no
bearing whatsoever again on whether the defendant is guilty or not guilty."

[17] When the state presented its evidence in the felony murder case and
began to introduce its evidence in the jury tampering case, the court reiter-
ated that the cases had been joined for judicial economy.

[18] In its final jury charge, the trial court reminded the jurors that the
cases were joined for judicial economy and that they "should not make any
inference about the joinder of these two cases."

[19] The presence of the second *Boscarino* factor in this case prejudiced
the defendant's trial only with respect to the charges in the jury tampering
case, which involved no brutal and shocking conduct, and did not prejudice
the defendant with respect to the charges in the felony murder case.

nation, it admitted a statement made by the defendant to one of the state's witnesses. The defendant argues that he was unfairly prejudiced by admission of the evidence, and that his request to open his cross-examination and to withdraw the offending questions should have been granted. The state responds that the defendant "opened the door" to such testimony during cross-examination. After reviewing the record, we conclude that admission of the testimony, although improper, was harmless.

The following additional facts are relevant to our review of the defendant's claim. The challenged testimony was given by Steven Thomas, who was present on the night of the shooting. Thomas testified that, earlier in the evening, the defendant had asked Thomas to allow the defendant and the defendant's friend, Henry Jones, to borrow Thomas' van. During direct examination, the state asked Thomas whether there came "a point in time where something happened to [his] van?" Thomas began to reply, "I was threatened that if I didn't give somebody a ride—and I didn't . . . ." The defendant objected, and the trial court sustained the objection and ordered that the answer be stricken from the record.

The state then asked, "Did there come a point in time while you were standing out near your van that [the defendant] said something to you?" Thomas responded in the affirmative, and the state inquired, "And what was that?" The defendant again objected.[20] Outside the presence of the jury, Thomas indicated to the court that the defendant had said to him "that if . . . Jones didn't drive the van, no one would drive the van, and it would be busted up so nobody could drive it." After a lengthy

---

[20] The record reveals that defense counsel objected, asserting that Thomas' testimony was inadmissible hearsay, irrelevant, and inadmissible character evidence.

colloquy between defense counsel and the prosecutor, the trial court sustained the defendant's objection without explanation, stating simply that the evidence "was out for the time being, unless it finds its way back in through some other way . . . ."

During cross-examination, defense counsel asked Thomas whether he was concerned about his van after he heard about the shooting.[21] Specifically, defense counsel asked, "You were concerned [about your van] because you were afraid that the police might have it tied up in the shooting; is that correct?" Thomas replied, "Not at that time, no."

After cross-examination, the state argued to the trial court that the defendant had opened the door to questions regarding his statement to Thomas by inquiring into Thomas' concern about his van. The defendant countered that he had not opened the door to such questioning, and, in the alternative, he requested that the court allow him to open his cross-examination so that he could withdraw the offending questions. The court denied the defendant's request to withdraw the questions and permitted Thomas to testify as to the

---

[21] With respect to the van, the colloquy between defense counsel and Thomas proceeded, in full, as follows:

"Q. Following . . . Jones coming to the apartment, you remained in the apartment?

"A. Yes, sir.

"Q. And you remained in there and you were nervous; is that fair to say?

"A. Yes.

"Q. You were concerned you might somehow be implicated in the shooting?

"A. No.

"Q. You were also concerned about your van, were you not?

"A. Yes.

"Q. And you were—I believe you referred to it as your beautiful van. You were concerned because you were afraid that the police might have it tied up in the shooting; is that correct?

"A. Not at that time, no."

defendant's threat that the van would be "bust[ed] up . . . ."[22]

Generally, "a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it [when] the party initiating inquiry has made unfair use of the evidence. . . . [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Internal quotation marks omitted.) *State* v. *Victor O.*, 301 Conn. 163, 189, 20 A.3d 669, cert. denied, U.S. , 132 S. Ct. 583, 181 L. Ed. 2d 429 (2011).

"In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter . . . and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence . . . . Accordingly, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal. . . . We will not overturn the trial court's decision unless the trial court has abused its discretion." (Internal quotation marks omitted.) Id.

---

[22] Although the trial court did not expressly state its finding that the defendant had opened the door during cross-examination, we assume, in the absence of any evidence to the contrary, that this was the basis for the court's admission of the defendant's statement on redirect.

Upon review of the evidence in the present case, we conclude that the trial court improperly admitted Thomas' testimony concerning the defendant's statement. A defendant's questions on cross-examination do not open the door to inquiry into unrelated matters. Rather, "the opening the door doctrine is expressly intended to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Internal quotation marks omitted.) *State* v. *Powell*, 93 Conn. App. 592, 600, 889 A.2d 885, cert. denied, 277 Conn. 924, 895 A.2d 797 (2006), quoting *State* v. *Colon*, 272 Conn. 106, 187, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). Accordingly, even if Thomas was concerned that he would be implicated in the crime, as suggested by defense counsel's question during cross-examination, this fact would have no bearing on Thomas' separate concern that the defendant was going to damage his van. It was improper, therefore, for the trial court to conclude that the defendant had opened the door to Thomas' testimony that the defendant had threatened to damage Thomas' van.

Despite our conclusion that the evidence was improperly admitted, however, we further determine that the impropriety was harmless. "[W]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted,

and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Osimanti*, supra, 299 Conn. 18–19.

The present record reveals fair assurance that the improper admission of the defendant's statement did not substantially affect the defendant's conviction. First, the state's cases against the defendant were particularly strong in light of the defendant's confession in the jury tampering case and the testimony of two eyewitnesses in the felony murder case. Additionally, despite the defendant's claim that Thomas' testimony showed a violent tendency, the statement at issue involved potential property damage, rather than bodily injury. The statement was therefore unlikely to inflame the jury and was irrelevant to the crimes at issue in the present case.

Finally, even if the defendant had opened the door to such questions, the trial court was under no obligation to allow him to open his cross-examination and withdraw the offending questions. At that point in the proceedings, the questions had already been asked and answered, and cross-examination was complete. Cf. *State* v. *Caracoglia*, 95 Conn. App. 95, 105 n.7, 895 A.2d 810 (during preliminary hearing, trial court warned defendant that proposed line of questioning would "open the door" to significant prejudice on cross-examination), cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). For these reasons, we conclude that the

improper admission of the defendant's statement to Thomas was harmless.

III

The final issue presented by the defendant's appeal is whether he was entitled to a new trial due to alleged prosecutorial improprieties. The defendant claims that three statements by the prosecutor during closing and rebuttal arguments were improper, and that those improprieties deprived him of a fair trial. The state responds that only one instance of impropriety occurred, and that none of the statements so infected the trial as to make the defendant's conviction a denial of due process. We conclude that all three remarks were improper, but that the defendant failed to prove that they amounted to a denial of his right to a fair trial.

As an initial matter, we set forth the governing legal principles. We begin by noting that, although the defendant preserved one of his claims of impropriety at trial, he did not preserve the other two that he now raises on appeal. Nevertheless, we review all three because, under settled law, "a defendant who fails to preserve claims of prosecutorial misconduct need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360, 897 A.2d 569 (2006).

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fair-

ness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007).

"[O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that misconduct was objected to at trial." (Internal quotation marks omitted.) *State* v. *Warholic*, supra, 278 Conn. 362. These factors include: "the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 34. In *Williams*, however, we did not specify the party that bears the burden of proof with respect to these factors, which has resulted in confusion in subsequent case law. See *State* v. *Gibson*, 114 Conn. App. 295, 320 n.2, 969 A.2d 784 (2009) (*Bishop, J.*, dissenting) (discussing possible interpretations of case law as to burden of proof), rev'd in part, 302 Conn. 653, 31 A.3d 346 (2011); see also *State* v. *Angel T.*, 292 Conn. 262, 288 n.21, 973 A.2d 1207 (2009) (our case law "does not . . . indicate which party bears the burden of proving the harmlessness of the prosecutorial impropriety"). Accordingly, before addressing the substance of the defendant's claim in this case, we take this opportunity to review relevant case law and clarify the burden of proof.

In *State* v. *Cassidy*, 236 Conn. 112, 129, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds by *State*

v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000), this court stated that, because the prosecutorial impropriety at issue in that case "impermissibly infringed upon [the defendant's] rights guaranteed under the confrontation clauses of the federal and state constitutions, he is entitled to a new trial on those counts unless the state can establish that the objectionable comments were harmless beyond a reasonable doubt." In contrast, in *State* v. *Alexander*, supra, 302 n.11, we found that the Appellate Court had improperly placed the burden on the state to prove harmless error in a case of prosecutorial impropriety, and that, "[t]o prove prosecutorial [impropriety], the defendant must demonstrate substantial prejudice." Id., 303.

Next, in *State* v. *Warholic*, supra, 278 Conn. 405 n.29, the burden was placed upon the defendant to prove that he was harmed by the prosecutorial impropriety, and we expressly rejected the defendant's request that we adopt "a new standard under which, once the defendant establishes that prosecutorial misconduct occurred, the burden would shift to the state to prove that the misconduct was harmless beyond a reasonable doubt." In *State* v. *Angel T.*, supra, 292 Conn. 288 n.21, however, we concluded, "[i]nasmuch as the fourth prong of *Golding* requires the state to prove that the constitutional violation was harmless beyond a reasonable doubt . . . the state bears the burden of demonstrating, beyond a reasonable doubt, the harmlessness of the prosecutorial impropriety in a given case." (Citation omitted.) Finally, in *State* v. *Tomas D.*, 296 Conn. 476, 513–14, 995 A.2d 583 (2010), we applied the *Williams* factors "to determine whether the state ha[d] established beyond a reasonable doubt that the prosecutorial impropriety . . . did not deprive the defendant of a fair trial."

We now clarify that, when a defendant raises on appeal a claim that improper remarks by the prosecutor

deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process. See *State* v. *Gibson*, supra, 114 Conn. App. 321 n.2 (*Bishop, J.*, dissenting) ("when the claim of impropriety does not directly bear on a specific constitutional right but, rather, implicates due process generally, the defendant retains the burden of demonstrating both the impropriety and the attendant denial of due process"). On the other hand, consistent with our decisions in *Cassidy* and *Angel T.*, if the defendant raises a claim that the prosecutorial improprieties infringed a specifically enumerated constitutional right, such as the fifth amendment right to remain silent or the sixth amendment right to confront one's accusers, and the defendant meets his burden of establishing the constitutional violation, the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt. See, e.g., *State* v. *Cassidy*, supra, 236 Conn. 129 ("[b]ecause the prosecutor's argument impermissibly infringed upon his rights guaranteed under the confrontation clauses of the federal and state constitutions, he is entitled to a new trial on those counts unless the state can establish that the objectionable comments were harmless beyond a reasonable doubt"); see also *State* v. *Gibson*, supra, 321 n.2 (*Bishop, J.*, dissenting) ("[w]hen the claimed prosecutorial impropriety directly implicates a specific constitutional right, such as . . . the right of confrontation, or to present a defense, or to remain silent, the burden of harmlessness will still shift to the state").

This allocation of the burden of proof is appropriate because, when a defendant raises a general due process claim, there can be no constitutional violation in the absence of harm to the defendant caused by denial of

his right to a fair trial. The constitutional analysis and the harm analysis in such cases are one and the same. With the exception of *State* v. *Tomas D.*, supra, 296 Conn. 513–17, our cases are in harmony regarding this rule.[23] To the extent that our decision in *Tomas D.* is inconsistent with this conclusion, it is hereby overruled. Having clarified the burden of proof, we now turn to the question of whether the prosecutor's remarks were improper in this case.

The following facts are relevant to our resolution of the defendant's claim. With respect to the first alleged impropriety, the two cases against the defendant, although joined for trial, were treated as legally unrelated when presented to the jury. The trial court declined to instruct the jury that it could consider the evidence of the jury tampering charges as evidence of the defendant's consciousness of guilt in the felony murder case. Nevertheless, at the end of his closing argument, the prosecutor stated, "You decide if he tried to tamper with jurors, and *you decide why he would try to do that.*" (Emphasis added.) Defense counsel did not object to this remark.

Next, during the defendant's closing argument, defense counsel repeatedly stated that the defendant was "honest," and that he "told the truth" when he testified. In response to these comments, at the beginning of the state's rebuttal, the prosecutor stated: "[Y]ou've heard defense counsel tell you her client was

---

[23] We reject any assertion that both *Angel T.* and *Tomas D.* stand for the proposition that the state should bear the burden of proving that the impropriety did not amount to a denial of due process. As we recognized in *State* v. *Coccomo*, 302 Conn. 664, 675–76, 31 A.3d 1012 (2011), because *Angel T.* involved a claim of prosecutorial impropriety amounting to a violation of the defendant's right to counsel, the state properly bore the burden in that case. *Tomas D.*, on the other hand, involved a general due process claim, rather than a claim asserting a denial of one of the defendant's specifically enumerated constitutional rights. Thus, in that case, the burden of proof should have been placed upon the defendant.

honest. It's your decision and your duty to decide who is being honest. In fact, *attorneys aren't even ethically allowed to say a particular witness is honest or not. That's for the jury . . . .*" (Emphasis added.) The defendant objected to this remark as a personal attack, but the objection was overruled.

The last alleged impropriety occurred during the state's rebuttal, when the prosecutor told jurors: "[Y]ou have to consider, if the defendant is willing to contact particular jurors seated on his case and get . . . Evans to reach out to them, someone he hardly met, and [he was] able to manipulate her, *what else is he capable of doing?*" (Emphasis added.) The defendant did not object to this remark.

The defendant claims on appeal that all three of these statements were improper. The state responds that the first and third statements were not improper, and that, with respect to the second statement, the defendant failed to satisfy his burden of proving that he was denied due process. We conclude that all three remarks were improper. We further conclude, however, that the remarks were minor and isolated, and therefore did not deprive the defendant of a fair trial.

We conclude that the prosecutor's first remark violated the trial court's order that the parties separate the evidence in the two cases before the jury. See *State v. Ubaldi*, 190 Conn. 559, 567–68, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). Prior to closing arguments, the trial court announced its decision not to provide a consciousness of guilt instruction with respect to the defendant's attempt to tamper with the jury, or to indicate to the jury that the two cases were legally related in any way. Indeed, defense counsel argued to the court, "if Your Honor is not instructing that [the jury tampering] is consciousness of guilt, [the state] should be prohibited

from arguing that it's consciousness of guilt," to which the court responded, "they are not going to argue that." The prosecutor's subsequent statement linking the two cases violated the court's order by referencing evidence outside the record in the felony murder case. See *State v. Ceballos*, 266 Conn. 364, 400, 832 A.2d 14 (2003) ("a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record"). This statement, therefore, was improper.

Next, the prosecutor's second statement, although in response to defense counsel's improper statements bolstering the defendant's credibility, was improper because it impugned defense counsel by characterizing her as unethical. "It has been held improper for the prosecutor to impugn the role of defense counsel. . . . In particular, [i]t is improper for a prosecutor to tell a jury, explicitly or implicitly, that defense counsel is employing standard tactics used in all trials, because such an argument relies on facts not in evidence and has no bearing on the issue before the jury, namely, the guilt or innocence of the defendant." (Citations omitted; internal quotation marks omitted.) *State v. Luster*, 279 Conn. 414, 433–34, 902 A.2d 636 (2006); see also *State v. Outing*, 298 Conn. 34, 82, 3 A.3d 1 (2010) ("[t]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel"), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011). By distracting the jury from the ultimate question of the defendant's guilt, therefore, the prosecutor acted improperly.

Finally, like the first challenged statement, the prosecutor's third statement improperly linked the cases in violation of the court's order to keep them separate and therefore relied upon evidence outside the record in the two cases. By highlighting the defendant's manipulation of Evans in the jury tampering case, and asking jurors "what else [the defendant was] capable of doing"

in light of this manipulation, the prosecutor asked jurors to infer that the defendant was also guilty in the felony murder case. See *State* v. *Ceballos*, supra, 266 Conn. 400 ("a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record").

Having determined that all three of the prosecutor's statements were improper, we now turn to whether the defendant has proven that the improprieties, cumulatively, "so infected the trial with unfairness as to make the conviction[s] a denial of due process." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 723, 793 A.2d 226 (2002). We conclude that he has not. Under the first *Williams* factor, comments made by defense counsel during closing argument invited the state's comment regarding her ethics in rebuttal. Cf. *State* v. *Alexander*, supra, 254 Conn. 308 (when improper comments were made during prosecutor's initial summation and later rebuttal argument, defendant's comments during closing argument could not have invited comments in response). Further, the comment regarding defense counsel's ethics also did not pertain to critical issues in the case, but instead focused upon the professional conduct of defense counsel.

With respect to the second and third *Williams* factors, all three of the contested statements by the prosecutor were isolated and occurred within the state's lengthy closing argument. Additionally, the trial court cured any harm by instructing the jury that the arguments of counsel were not evidence on which the jurors could rely,[24] and reiterating that the cases had been joined merely for judicial economy, rather than cross

[24] Specifically, the trial court explained: "Closing arguments, you heard them this afternoon from each counsel . . . . They are intended to advance to you their respective positions, and again, it is not evidence. It is for you to decide. And if any of the evidence stated by any of the lawyers, and indeed me, differs from your recollection of the evidence, who controls? You. You are the triers of the facts."

admissibility purposes. *State* v. *Collins*, 299 Conn. 567, 590, 10 A.3d 1005 ("[w]e presume the jury . . . followed [the court's] instruction in the absence of any indication to the contrary"), cert. denied,     U.S.    , 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011). Lastly, pursuant to the final *Williams* factor, the state's case against the defendant was strong, including the defendant's confession in the jury tampering case and the testimony of two eyewitnesses in the felony murder case.

Finally, it bears mention that only one of the improprieties was so glaring that it was objected to at trial by defense counsel. When no objection is raised at trial, we infer that defense counsel did not regard the remarks as "seriously prejudicial" at the time the statements were made. *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004) ("[T]he determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." [Internal quotation marks omitted.]). Based on our review of the *Williams* factors, we conclude that the prosecutorial improprieties did not deprive the defendant of his right to a fair trial.

The judgments are affirmed.

In this opinion the other justices concurred.