******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

## STATE OF CONNECTICUT *v.* DEQUAN MCKETHAN
### (AC 40655)

Alvord, Keller and Bishop, Js.

*Syllabus*

Convicted under two informations of the crimes of murder, carrying a pistol without a permit and possession of narcotics, the defendant appealed to this court. He claimed that the trial court improperly granted the state's motion for joinder of the cases for trial because the conduct alleged in the murder case was significantly more brutal and shocking than the conduct alleged in the carrying a pistol without a permit and possession of narcotics case. *Held* that the trial court did not abuse its discretion in consolidating the two informations for trial, as the defendant failed to demonstrate that joinder resulted in substantial prejudice to him; although the defendant's conduct with respect to the murder charge was significantly more brutal and shocking than his conduct related to the carrying a pistol without a permit and possession of narcotics charges, the court's explicit instructions to the jury to consider each charge separately in reaching its verdict cured the risk of substantial prejudice to the defendant and, therefore, preserved the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases.

Argued January 22—officially released August 7, 2018

*Procedural History*

Information, in the first case, charging the defendant with the crimes of possession of narcotics, possession of narcotics with intent to sell, possession of a weapon in a motor vehicle, and criminal possession of a pistol, and with possession of less than one-half ounce of a cannabis-type substance and the infractions of improper use of a marker, operating a motor vehicle with a suspended license, operating an unregistered motor vehicle and operating a motor vehicle without minimum insurance, and information, in the second case, charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New London, geographical area number twenty-one, where the court, *Jongbloed, J.*, granted the state's motion for joinder; thereafter, the state filed a substitute information; subsequently, the matter was tried to the jury; verdicts and judgments of guilty of murder, carrying a pistol without a permit and possession of narcotics; thereafter, the state entered a nolle prosequi as to the remaining charges, and the defendant appealed to this court. *Affirmed.*

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Dequan McKethan, appeals from the judgments of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims that the trial court improperly granted the state's motion for joinder of the two separate cases against him for trial. We disagree and, accordingly, affirm the judgments of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On September 24, 2012, the defendant left the house that he shared with his girlfriend, Chelsea Vanderslice, on Summit Street in Norwich between 9:45 and 10 p.m. The defendant went back to his house around 10:45 or 11 p.m. but left again. The defendant gave his car keys to Duryll Barham and asked Barham to watch his car. Barham called the defendant around 2 or 3 a.m., and the defendant told him to return the car in front of the defendant's house, which Barham later did.

The defendant knew the victim, Darius Bishop, because the victim had previously sold the defendant marijuana. On the night of September 24, 2012, the victim called the defendant's cell phone four times between 10:11 and 10:26 p.m. In that same time period, the defendant called the victim's cell phone twice. By 1 a.m. on September 25th, the defendant and the victim were at the same location. Sometime between 2 and 3 a.m., they ended up outside the Charles Long Sports Complex in Bozrah, where the defendant shot the victim in the head, killing him.

Connecticut State Police responded to a 911 call around 7 a.m. and found the victim's body lying face down. He was barefoot, with his shoes lying next to his body and his driver's license in his left hand. A single .22 caliber shell casing was found on the ground underneath the victim's head. The brand of the shell casing was Super-X.

Officer Frank Callender, a Norwich police officer, found the victim's car parked on Bills Avenue in Norwich the next day, on September 26, 2012. Bills Avenue intersects with Summit Street, where the defendant lived.

That same day, Officer Avery Marsh, also with the Norwich Police Department, was patrolling the area of Summit Street. He observed the defendant's red Nissan Maxima, which did not have a front license plate displayed. Through a check with the Department of Motor Vehicles, Officer Marsh discovered that the rear license plate on the red Nissan Maxima was registered to a 2004 Hyundai Santa Fe. After learning this information, Officer Marsh conducted surveillance of the car from

a distance and eventually observed the defendant get into the car and drive south on Summit Street. Officer Marsh lost sight of the vehicle soon thereafter.

The next day, on September 27, 2012, Officer Marsh returned to the area of Summit Street and observed the defendant and Vanderslice occupying the red Nissan Maxima. Eventually, Vanderslice exited the vehicle, and the defendant drove down the street.

Officer Marsh pulled the defendant over, and almost as soon as the car stopped, the defendant moved his right arm in a downward motion. Officer Marsh recognized this movement as the defendant potentially trying to conceal something. When Officer Marsh approached the defendant's vehicle and asked for his driver's license, the defendant handed him a Connecticut identification card rather than a driver's license. The defendant's hand was shaking as he handed Officer Marsh his identification card, and he admitted that his driver's license was suspended. The defendant also admitted that his car was not registered and that it was not insured.

Officer Marsh asked the defendant to exit the vehicle and inquired whether he had any knives or guns on him. The defendant said that he did not have any knives on him. When Officer Marsh asked again specifically about guns, the defendant did not respond.

Officer Marsh then conducted a patdown of the defendant. During the patdown, Officer Marsh felt a small bulge on the defendant's right pants pocket. When Officer Marsh looked down, he saw part of a plastic bag sticking out of the pocket, which he recognized as narcotics packaging. After removing the bag from the defendant's pocket, Officer Marsh saw that it contained a white powder-like substance, and the defendant said "that's flour, I'm not going to lie, I use it." Officer Marsh knew that "flour" was the street term for powder cocaine and subsequent testing confirmed that the bag contained .988 grams of cocaine.

Officer Marsh placed the defendant under arrest and searched the defendant's car. Officer Marsh discovered a .22 caliber handgun under the driver's seat. The defendant did not have a permit for the gun, and the gun was registered to a man named Timothy McDonald, who did not know the defendant. In addition, a box of Super-X .22 caliber bullets was found underneath the driver's seat of the vehicle. Super-X bullets were also found inside the gun. In a subsequent search of the defendant's residence, Detective Keith Hoyt of the Connecticut state police discovered an additional box of Super-X .22 caliber ammunition.

Ballistics tests confirmed that the .22 caliber handgun found in the defendant's car was the gun that fired the shell casing found underneath the victim's body. In addition, DNA testing revealed that the defendant's

DNA was present on both the trigger and the magazine of the .22 caliber handgun found in his car.

After booking the defendant on the charges related to the motor vehicle stop, Officer Marsh informed the defendant that the state police wanted to talk to him. In response, the defendant stated: "[T]he state police, well, this must be a big deal. Officer, everything is mine." Later, however, he stated, "I can't believe I let my boy use my car and now there's a gun in it." In an interview with the state police, the defendant stated that someone named "Dee" borrowed his car earlier that morning but provided no details as to who "Dee" was. When the defendant was served with an arrest warrant on the murder charge, he admitted that he "lied about some things and told the truth about other things" during his interview with the state police.

The state initially charged the defendant in two separate informations. On September 28, 2012, the state filed an information in docket numbers CR-12-0119509-S and MV-12-0158897-S charging the defendant with offenses related to the motor vehicle stop, including criminal possession of the pistol and possession of narcotics.[1] On December 10, 2012, the state filed an information in docket number CR-12-0120162-T charging the defendant with murder. On May 28, 2015, the state filed a motion for joinder of the two informations. The motion averred that the evidence of other crimes was cross admissible and that the cases arose out of a single transaction. The defendant filed a written objection to that motion, asserting that "the defendant will suffer substantial prejudice if these matters are tried at the same time before the same jury . . . ."

After hearing arguments from the parties on July 14, 2015, the court granted the motion for joinder on July 20, 2015. The court ruled that the evidence was not cross admissible, because although evidence from the motor vehicle stop would be admissible in the prosecution of the murder charge, the court was not convinced that evidence of the murder would be admissible in a trial of only the charges resulting from the motor vehicle stop. Conducting an analysis under *State* v. *Boscarino*, 204 Conn. 714, 529 A.2d 1260 (1987), however, the court concluded that joinder would not substantially prejudice the defendant. The court explained that (1) the charges involved discrete and distinguishable facts, (2) "although the charge of murder is certainly more violent than charges of narcotics and weapons violations, it does not rise to the level of substantial prejudice," and (3) joinder would not result in an overly long or complex trial. The state subsequently filed a substitute information that charged the defendant with murder in violation of § 53a-54a, carrying a pistol without a permit in violation of § 29-35 (a), and possession of narcotics in violation of § 21a-279 (a).

A jury trial followed, and the defendant was found

guilty of all counts. The court sentenced the defendant to a total effective sentence of fifty six years of imprisonment. This appeal followed.

On appeal, the defendant claims that the trial court improperly granted the state's motion for joinder of the two separate cases against him for trial. Specifically, he argues that "[c]onsideration of the brutality of the murder in relation to the gun charge should have compelled the conclusion that joinder was improper . . . ."[2] The defendant further argues that no jury instructions were given to cure the prejudicial effect of the joinder. We disagree.

We begin by setting forth the standard of review and legal principles that guide our analysis. "The principles that govern our review of a trial court's ruling on a motion for joinder or a motion for severance are well established. Practice Book § 41-19 provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 543–44, 34 A.3d 370 (2012).

"A long line of cases establishes that the paramount concern is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, where evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper where the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials. . . . Where evidence is cross admissible, therefore, our inquiry ends.

"Substantial prejudice does not necessarily result from [joinder] even [if the] evidence of one offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evi-

dence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"[Accordingly, the] court's discretion regarding joinder . . . is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [in *State* v. *Boscarino*, supra, 204 Conn. 722–24] we have identified several factors that a trial court should consider in deciding whether a severance or [denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 155–56, 51 A.3d 1048 (2012).

In the present case, the court found that the evidence was not cross admissible, but nevertheless concluded that joinder was proper pursuant to the *Boscarino* factors.[3] The defendant relies solely on the second *Boscarino* factor to support his argument that joinder of the two cases was improper, and, therefore, we will not discuss the first and third factors in our analysis. The defendant argues that joinder was improper under the second *Boscarino* factor because the conduct alleged in the murder case was significantly more brutal and shocking than the conduct alleged in the carrying a pistol without a permit and possession of narcotics case.

Although we agree with the defendant that the second *Boscarino* factor weighs against joinder, we conclude that the defendant has not shown that joinder resulted in substantial prejudice. "Whether one or more offenses involved brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." (Internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 551.

In the murder case, the jury heard evidence that the defendant shot and killed the victim in the middle of the night at an isolated location. The victim was found

lying face down on the ground with his shoes set next to his body and his driver's license in his left hand.[4] In the narcotics possession and carrying a pistol without a permit case, however, no violence was involved. Because the defendant's conduct in killing the victim in the murder case was significantly more brutal and shocking than his conduct in possessing narcotics and carrying a pistol without a permit, we conclude that the second *Boscarino* factor weighs against joinder and that the evidence from the murder case raised a risk of substantial prejudice with regard to the drug and firearm possession case. See *State* v. *Payne*, supra, 303 Conn. 551–52 (comparing relative levels of violence of felony murder, where victim was shot at close range, and tampering with jury, in which no violence was involved, stating "[w]e would be hard pressed to find cases that, when joined, raise a more significant concern regarding the relative levels of violence than the cases at issue here").

Having concluded that the defendant's conduct with respect to the murder charge could fairly be seen as brutal or shocking, we now must decide whether the court's jury instruction cured any potential prejudice. "On appeal, the burden rests with the defendant to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury . . . ." (Internal quotation marks omitted.) *State* v. *Wilson*, 142 Conn. App. 793, 801, 64 A.3d 846, cert. denied, 309 Conn. 917, 70 A.3d 40 (2013). "[A]lthough a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Internal quotation marks omitted.) Id., 804.

In the present case, the court's explicit instructions to the jury that it should consider the offenses separately ameliorated any possible prejudice that joinder may have caused. Although the defendant argues that no such instructions were given, we disagree. The court cautioned the jury at the start of trial and in its final instruction to consider each charge separately in reaching its verdict. Specifically, at the start of trial, the court instructed the jury: "Each charge against the defendant is set forth in the information in a separate paragraph or count and *each such offense must be considered separately by you in deciding this case*." (Emphasis added.)

In addition, in its final charge to the jury, the trial court instructed: "The defendant is entitled to and must be given by you a separate and independent determination of whether he is guilty or not guilty as to each of the counts. Each of the counts charged is a separate crime. The state is required to prove each element in

each count beyond a reasonable doubt. Each count must be deliberated upon separately. The total number of counts charged does not add to the strength of the state's case. You may find that some evidence applies to more than one count. The evidence, however, must be considered separately as to each element in each count. Each count is a separate entity. You must consider each count separately and return a separate verdict for each count. This means you may reach opposite verdicts on different counts. A decision on one count does not bind you[r] decision on another count." Without evidence to the contrary, we presume that the jury followed these instructions. See *State* v. *Parrott*, 262 Conn. 276, 294, 811 A.2d 705 (2003) ("[b]arring contrary evidence, we must presume that juries follow the instructions given them by the trial judge" [internal quotation marks omitted]).

Thus, even though the murder charge could be viewed as brutal or shocking due to its comparative level of violence in relation to the possession charges, the murder charge "was not *so* brutal or shocking as to create a substantial risk that the jury, *with explicit instructions to treat each offense separately*, would nevertheless treat the evidence cumulatively." (Emphasis added; internal quotation marks omitted.) *State* v. *Wilson*, supra, 142 Conn. App. 803 (concluding that trial court did not abuse its discretion in consolidating two cases when trial court "repeatedly cautioned the jury to consider each charge separately in reaching its verdict").

We conclude that the court's jury instructions cured the risk of substantial prejudice to the defendant and, therefore, preserved the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases. See *State* v. *Davis*, 286 Conn. 17, 33–36, 942 A.2d 373 (2008) (concluding that trial court's jury instructions cured risk of prejudice to defendant); see also *State* v. *Rivera*, 260 Conn. 486, 493, 798 A.2d 958 (2002) ("[a]lthough we might disagree with the trial court's conclusion that the two cases were not brutal or shocking, we cannot say, as a reviewing court, that the trial court's conclusion, coupled with proper and adequate jury instructions, constituted an abuse of discretion"). We therefore conclude that the court did not abuse its discretion in consolidating the two informations for trial.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The defendant was also charged with several motor vehicle offenses in this information. The state entered a nolle prosequi as to those charges.

[2] The state argues that the defendant's claim on appeal is not preserved. Specifically, the state argues that because the defendant argued before the trial court that the circumstances of the firearm and drug counts would prejudice the jury in its consideration of the murder count, he advances a new claim on appeal by arguing that the circumstances of the murder charge would prejudice the jury in its consideration of the firearm and drug charges. We disagree.

"[T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." *State* v. *Jorge P.*, 308 Conn. 740, 754, 66 A.3d 869 (2013). "[T]he essence of the preservation requirement is that *fair notice* be given to the trial court . . . ." (Emphasis in original.) *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004).

We conclude that the defendant properly preserved his claim. The defendant filed a written objection to the state's motion for joinder, asserting that "the defendant will suffer substantial prejudice if these matters are tried at the same time before the same jury . . . ." At the hearing on this motion, the defendant argued: "The concern that we have as the defense is . . . that the addition of the charges adds the . . . prejudice that we're concerned about. And it paints [the defendant] . . . in a prejudicial way as . . . somebody that's perhaps worse than someone who's merely charged in this case in the homicide of the . . . victim." Although the defendant's argument at the hearing on the motion, unlike his written objection, addressed only whether the addition of the possession charges would prejudice the murder charge, the trial court, in its ruling on the motion for joinder, addressed the specific issue presented to this court. In its ruling on the motion for joinder, the trial court explained: "[A]lthough the charge of murder is certainly more violent than charges of narcotics and weapons violations, it does not rise to the level of substantial prejudice." Because the trial court addressed the issue now on appeal, it is clear that the trial court was placed on reasonable notice of the claim.

In support of its argument, the state places great reliance on *State* v. *Snowden*, 171 Conn. App. 608, 157 A.3d 1209, cert. denied, 326 Conn. 903, 163 A.3d 1204 (2017). The defendant in *Snowden* similarly claimed on appeal that the trial court erred in permitting joinder of one information charging murder with a second information charging criminal possession of a firearm. Id., 610. Specifically, the defendant argued that the court failed to consider whether the allegations in the murder case were significantly more shocking and brutal than the allegations in the criminal possession case. Id., 613. Because the defendant objected to the joinder only on the basis of the admissibility of the evidence supporting the criminal possession charge in the murder charge, this court concluded that the defendant's "distinct claim" on appeal that the evidence supporting the murder charge was unduly prejudicial and not cross admissible in the criminal possession case was not properly preserved and declined to review the defendant's claim. Id., 616.

We conclude that *Snowden* is distinguishable from the present case. In *Snowden*, when the defendant objected to the joinder of his cases, he argued only that the evidence in his cases was not cross admissible. Id. Moreover, although the trial court in *Snowden* addressed the *Boscarino* factors to assess whether joinder would result in substantial prejudice, the court addressed only whether the possession and tampering charges were of a violent nature; it did not address the violent nature of the murder charge, which went to the heart of the defendant's argument on appeal. Unlike the trial court in *Snowden*, the trial court in this case specifically addressed the violent nature of the defendant's murder charge in its ruling, which the defendant presently challenges on appeal. We therefore conclude that the defendant's claim is preserved for appellate review.

[3] This court, therefore, does not need to address whether the evidence in the murder case was cross admissible in the drug possession and firearm possession case. See *State* v. *Devon D.*, 321 Conn. 656, 664–65, 138 A.3d 849 (2016) (At trial, "the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the factors set forth in [*State* v. *Boscarino*, supra, 204 Conn. 722–24]." [Internal quotation marks omitted.])

[4] During its closing argument, the state pointed out the inferences that the jury could draw from these circumstances: "I can't tell you exactly why [the victim] had his sneakers off. I can't tell you why he was holding his license in his outstretched hand, but common sense tells you that he was taken to be executed and that's exactly what happened. His feet were clean. His shoes had just been taken off whether someone was searching him or didn't want him to flee or something, we don't know. But you look at those pictures and it looks like he was yelling and somebody came up and fired a bullet into his brain and left him there to bleed and die. That's what we're

dealing with. You know it's not a joke, it's one of the most heinous things that you can imagine, really one of the most horrible ways for someone to lose their life."

———————————————————————