******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* OTERRIO R. BROWN
(AC 41139)

Alvord, Devlin and Beach, Js.

*Syllabus*

Convicted under two informations of the crimes of breach of peace in the second degree, criminal violation of a protective order and assault in the third degree, the defendant appealed to this court. The defendant's convictions stemmed from two incidents, which occurred a few days apart, in which he assaulted his roommate at their apartment in a dispute involving the defendant's wife. After the first alleged assault, the trial court issued a protective order against the defendant, and shortly thereafter, the defendant violated the order by assaulting the victim again. During voir dire, the state characterized the allegations against the defendant as "domestic violence," and "family violence," to which the court advised the state against using such language. Thereafter, the state described the allegations as a "dispute between roommates." On appeal, the defendant claimed, inter alia, that the trial court improperly granted the state's motion for joinder of the cases for trial by allowing the jury to consider prejudicial evidence of two different crimes and that the trial court improperly allowed the state to use prejudicial language during voir dire questioning, violating his federal right to a fair trial. *Held:*

1. The trial court did not abuse its discretion in granting the state's motion for joinder, as the defendant failed to demonstrate that joinder resulted in substantial prejudice to him; the two incidents leading to the charges against the defendant were discrete and easily distinguishable, even though they concerned the same victim and defendant, the record demonstrated that the events occurred at different times and locations, and resulted in different injuries, and although the assaults were violent, the defendant could not prevail on his claim that both assaults were so brutal or shocking as to interfere with the jury's ability to consider each offense fairly and objectively.

2. The defendant could not prevail on his unpreserved claim that his right to a fair trial was violated when the trial court allowed the state to use prejudicial language during its voir dire questioning of potential jurors and, thereafter, allowed the facts of the case to be introduced in an effort to remedy the use of the prejudicial language; the introduction of phrases such as "domestic violence," "family violence," and a "dispute between roommates" was not improper because the defendant did not dispute that the alleged crimes concerned disputes between roommates and the title of the protective order, which was admitted into evidence, referred to family violence, and, therefore, under the circumstances of the present case, the defendant failed to prove that a constitutional violation existed and that he was deprived of a fair trial.

3. The trial court did not abuse its discretion in denying the defendant's request for a continuance at the start of trial to accommodate the presence of a witness that the defendant claimed was crucial to his defense of property argument; because the defendant's request was made at the last moment, substantial delay of the jury trial was likely to result if the request had been granted, there was no guarantee from the defendant that the witness would have appeared had the request for the continuation been granted, and the defendant, at the time of the ruling, did not provide any additional reasoning for the importance of the witness' testimony, which had been discussed at earlier proceedings, nor did he make any representation regarding the witness' specific testimony.

Argued September 10, 2019—officially released January 14, 2020

*Procedural History*

Information, in the first case, charging the defendant with the crimes of breach of the peace in the second degree and failure to appear in the second degree, and information, in the second case, charging the defendant

with the crimes of criminal violation of a protective order, assault in the third degree and breach of the peace in the second degree, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the court, *K. Murphy, J.*, granted the state's motion for joinder; thereafter, the matter was tried to the jury; verdicts and judgments of guilty of two counts of breach of the peace in the second degree and of criminal violation of a protective order and assault in the third degree, from which the defendant appealed to this court. *Affirmed.*

*J. Patten Brown, III*, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc Ramia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Oterrio R. Brown, appeals from the judgments of conviction, following a jury trial, of two counts of breach of the peace in the second degree, and of violation of a protective order and assault in the third degree. The defendant claims that the court improperly (1) granted the state's request for joinder of the two informations; (2) allowed the state to use prejudicial language during the voir dire process; and (3) denied the defendant's request for a continuance. We disagree and affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On January 22, 2016, two police officers, Paul Calo and Kyle Cosmos, were called to a location in Waterbury to respond to a domestic disturbance. The officers found the defendant and the victim at the scene.[1] The defendant had blood on his shirt and a cut under his eye. When asked by Cosmos what had occurred, the defendant responded that there had been an altercation between him and the victim. The defendant further explained that he believed that the victim was sending naked photographs of himself to the defendant's wife, Grace Quackenbush, so the defendant "kind of went at him with clenched fist." After speaking with the defendant, the officers observed a trail of blood that led from the kitchen to the back hallway where the victim was found. Cosmos testified that the victim had a swollen left cheek and a bloody nose. The officers arrested the defendant.[2] He was charged with breach of the peace in the second degree, in violation of General Statutes § 53a-181 (a) (2), and, subsequently, a charge of failure to appear in the second degree[3] in violation of General Statutes § 53a-173 (a) (1) was added.

At a hearing on January 25, 2016, the trial court issued a protective order. The defendant was ordered not to have contact with the victim. The prohibition also included refraining from assaulting, threatening, abusing, harassing, following, or returning to the victim's home. Approximately thirty minutes after the issuance of the protective order, the defendant returned to the victim's home. Shortly thereafter, the police received a call regarding an incident at this location. Police found the victim outside the house, screaming that the defendant had just beaten him up. The officers also observed blood in the snow and physical injuries to the victim, including a swollen cheek and blood on his teeth. Calo testified that these injuries were in addition to those that he had observed on January 22, 2016.[4] The defendant was arrested and charged with criminal violation of a protective order in violation of General Statutes § 53a-223a; breach of the peace in the second degree in violation of § 53a-181 (a) (2); assault in the third degree in violation of General Statutes § 53a-61 (a) (1); and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1).

Prior to trial, the state filed a motion for joinder of the separate informations, and the court granted the state's motion. After a week long jury trial, the defendant was convicted of breach of the peace in the second degree regarding the January 22, 2016 incident. He also was convicted of criminal violation of a protective order, breach of the peace in the second degree, and assault in the third degree arising from the January 25 incident. The defendant was sentenced to a total effective sentence of ten years of incarceration, execution suspended after two years, followed by three years of probation. This appeal followed. Additional facts and procedural history will be set forth as needed.

I

The defendant claims that the trial court improperly granted the state's motion for joinder. He contends that combining the two informations substantially prejudiced him according to the factors set forth in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987). The state counters by asserting that the *Boscarino* factors were not met and that the evidence in this case was cross admissible. We agree with the state that the *Boscarino* factors were not met.[5]

We first set forth the appropriate standard of review. "The principles that govern our review of a trial court's ruling on a motion for joinder . . . are well established. Practice Book § 41-19 provides that, [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that [joinder] resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *McKethan*, 184 Conn. App. 187, 194–95, 194 A.3d 293, cert. denied, 330 Conn. 931, 194 A.3d 779 (2018). "Despite our reallocation of the burden when the trial court is faced with the question of joinder of cases for trial, the defendant's burden of proving error on appeal when we review the trial court's order of joinder remains the same. See *State* v. *Ellis*, 270 Conn. 337, 376, 852 A.2d 676 (2004) ([i]t is the defendant's burden on appeal to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury . . .)." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 550 n.11, 34 A.3d 370 (2012).

"Substantial prejudice does not necessarily result from [joinder] even [if the] evidence of one offense would not have been admissible at a separate trial

involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him. . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"The court's discretion regarding joinder . . . is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [in *State* v. *Boscarino*, supra, 204 Conn. 722–24] we have identified several factors that a trial court should consider in deciding whether a severance [or denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 544–45.

A

The defendant first claims that consolidating his cases allowed the jury to consider prejudicial evidence of two different crimes. See *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368 (1970). When a request for joinder is made, the state "bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19." *State* v. *Payne*, supra, 303 Conn. 549–50. To overcome this burden, the state must prove "by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors." Id., 550.

In the present case, the defendant was charged in two separate informations with crimes that occurred on two different days. The trial court found that joinder was proper as none of the *Boscarino* factors were present. Specifically, the court reasoned that the informations were "easily distinguishable." On appeal, the

defendant relies on the first and second *Boscarino* factors to support his claim that joinder of the two informations was improper. He concedes, in his brief, that the third factor was not met.

The first *Boscarino* factor is whether two or more factual scenarios were discrete and easily distinguishable. *State* v. *Boscarino*, supra, 204 Conn. 722–23. If the two events were not easily distinguishable, the first *Boscarino* factor is met. Id. The defendant asserts that the joinder of the informations was prejudicial because the jury was presented with factual scenarios that were not easily distinguishable. In particular, the defendant contends that the evidence of the scenarios presented to the jury created a "gross violation of his fundamental right to due process and a fair trial" because the two incidents involved the same defendant, the same victim, and similar alleged conduct, which occurred at the same location. The defendant further asserts that even if the state referred to each incident separately in its questioning and the court provided specific curative jury instructions, the defendant would still be prejudiced. We disagree.

In *State* v. *Herring*, 210 Conn. 78, 96, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989), our Supreme Court addressed the first *Boscarino* factor. The court concluded that the evidence involving two murders did not risk the degree of confusion and prejudice that were present in *Boscarino*. Id. The court in *Herring* explained that the two murders were discrete and easily distinguishable because the victims in the separate incidents suffered different injuries and the crimes occurred in different locations. Id.

Here, as in *Herring*, the jury was presented with evidence of two criminal scenarios, which occurred on January 22, 2016, and January 25, 2016. Even though the informations concerned the same victim and defendant and took place at the same general location, the events were easily distinguishable. Although both crimes occurred at the victim's home, the January 22, 2016 incident occurred inside the home, and the January 25, 2016 incident occurred outside the home. In reference to the January 22, 2016 incident, Cosmos and Calo both testified as to finding blood inside the home. With regard to the January 25, 2016 incident, Calo testified that blood was found in the snow, outside of the home.

Second, although the victim suffered a swollen cheek in both incidents, there was evidence of new injuries to the victim following the January 25, 2016 encounter. Specifically, when questioned as to whether the victim incurred new injuries during the January 25, 2016 incident, Calo responded: "The injuries that [the victim] sustained on the 22nd were still there but . . . there were more injuries because there was fresh blood on his mouth. . . . His face seemed more swollen and he

showed me a laceration on the inside of his mouth. . . . It wasn't bleeding out but it was fresh. It looked fresh to me."Additionally, the two events occurred at different times of the day. The January 22, 2016 incident occurred at night, while the January 25, 2016 event occurred during the day.

On the basis of the foregoing, it is clear from the record that the two scenarios were easily distinguishable in that the events occurred at different times and locations, and resulted in different injuries. The court did not abuse its discretion in finding the two incidents discrete and easily distinguishable. Therefore, the defendant was not prejudiced by joinder under the first *Boscarino* factor.

B

The defendant next claims that joinder was improper under the second *Boscarino* factor. He maintains that his conduct in both assaults was violent and resulted in visible injuries to the victim, resulting in prejudice. We disagree.

"Whether one or more offenses involved brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." (Internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 551. The assault on January 22 must be compared to the assault on January 25 to determine whether the "alleged conduct in one incident is not so shocking or brutal that the jury's ability to consider fairly and objectively the remainder of the charges is compromised." *State* v. *LaFleur*, 307 Conn. 115, 160–61, 51 A.3d 1048 (2012).

In *Payne*, the court compared the charge of felony murder to a separate charge of jury tampering and determined that the second *Boscarino* factor regarding prejudice was satisfied "[b]ecause the defendant's conduct in killing the victim in the felony murder case was significantly more brutal and shocking than his conduct in attempting to tamper with the jurors . . . [t]he evidence from the felony murder case was prejudicial to the defendant with regard to the jury tampering case." *State* v. *Payne*, supra, 303 Conn. 552. Furthermore, in *Boscarino*, the defendant committed multiple sexual assaults, all with the force of a deadly weapon. *State* v. *Boscarino*, supra, 204 Conn. 723. The court held that joinder was improper as it "gave the state the opportunity to present the jury with the intimate details of each of these offenses, an opportunity that would have been unavailable if the cases had been tried separately." Id.

In the present case, the defendant was charged with breach of the peace in the second degree with regard to the January 22 incident and breach of the peace in the second degree and with assault in the third degree with regard to the January 25 incident; both incidents

involved punching the victim. Neither incident was shockingly violent. The defendant concedes that the alleged conduct was not as brutal as the conduct that occurred in *Payne* and *Boscarino*.

Our Supreme Court has addressed the second *Boscarino* factor in the context of an assault. In *State* v. *LaFleur*, supra, 307 Conn. 160, the court held that an assault, in which the defendant punched a woman in the face, was not "so shocking or brutal as to preclude joinder." In *State* v. *Jennings*, 216 Conn. 647, 659, 583 A.2d 915 (1990), our Supreme Court held that an assault was not so brutal or shocking as to create a serious risk of prejudice when tried with an allegation of kidnapping. Citing to *State* v. *Herring*, supra, 210 Conn. 97, the court noted that although physical harm was inflicted on the victim, it was not disabling and did not satisfy the second *Boscarino* factor. *State* v. *Jennings*, supra, 216 Conn. 659.

In the present case, the defendant assaulted the victim on two separate dates. These assaults, although violent, were not so brutal or shocking as to interfere with the jury's ability to consider each offense fairly and objectively. As such, we conclude that the second *Boscarino* factor is not met.

We conclude that the defendant has not shown that he was prejudiced under the *Boscarino* factors and that the trial court did not abuse its discretion in granting the state's motion for joinder.

II

The defendant claims that the trial court improperly allowed the state to introduce facts and prejudicial language during its voir dire questioning. The defendant argues that the trial court violated his sixth amendment right to a fair trial by allowing the state to use the terms such as "domestic violence," "family violence," and "dispute between roommates" during voir dire. We disagree.

The state argues preliminarily that the issue is unpreserved and, thus, unreviewable. We agree that the issue is not preserved. Practice Book § 60-5 states, in relevant part, that "[this] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." An unpreserved constitutional claim, however, may be considered by this court if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel*

*R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

The record is adequate to review this claim, and the defendant is alleging a violation of his fundamental right to a fair trial pursuant to the sixth amendment of the United States constitution. Because the claim is reviewable, we address the merits of the defendant's claim.

The federal constitution guarantees a defendant the fundamental right to a trial by an impartial jury. U.S. Const., amends. VI and XIV. "Although the conduct of voir dire is within the broad discretion of the trial court . . . that discretion must be exercised within the parameters established by the right to a fair trial." (Citations omitted.) *State* v. *Mercer*, 208 Conn. 52, 58, 544 A.2d 611 (1988).

"The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But [the United States Supreme Court] has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. . . . Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience. . . . Due to the serious constitutional implications of the defendant's claim, [courts] have the duty to make an independent evaluation of the circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Mercer*, supra, 208 Conn. 58.

The following additional facts are pertinent to this claim. On June 5, 2017, the voir dire process began. During the state's questioning of a venireperson, the state characterized the allegations against the defendant as "domestic violence." The state asked: "[T]he term 'domestic violence,' does that conjure up any thoughts, feelings, opinions or anything like that?" The state continued to use the term "domestic violence" until the court, on its own accord, cautioned against its use in voir dire. The court stated: "I will caution the state [not to] use [a] term as general as domestic violence. I don't know . . . that [the relationship between the parties] fits . . . the traditional definition of a domestic violence . . . so I don't want to disqualify jurors when this isn't even going to be the kind of case that they're talking about [referring to domestic violence]." The state then altered its questioning and used the term "family violence" rather than "domestic violence." The court advised against using either term and suggested that an appropriate question would be, "how do you feel about violence between roommates." The state indicated its concerns about discussing the facts of the case, to which the court responded: "There's nothing getting into the facts of the case if it goes to a prejudice or bias . . . the allegations are violence between roommates. I don't have a problem with that." Ultimately, the state adopted the court's suggestion and referred to the allegation as a "dispute between

roommates."

The defendant contends that the court's supervision of voir dire questioning was improper in two ways: (1) the court improperly allowed prejudicial language to be used initially; and (2) to remedy the process, the court improperly allowed facts of the case to be introduced during the voir dire process. The defendant further contends that the use of facts in voir dire gave the jurors preconceived notions about the case, thereby, violating the defendant's constitutional right to a fair trial.[6]

Our Supreme Court has warned counsel and the trial courts not to engage in voir dire questioning that touches on the facts of the case. "We have noted with concern increasing abuse of the voir dire process . . . It appears that all too frequently counsel have engaged in wideranging interrogation of veniremen in a not too subtle attempt to influence the ultimate decision of a venireman if he should be selected for service or to ascertain the attitude of the venireman on an assumed state of facts." (Internal quotation marks omitted.) *Bleau* v. *Ward*, 221 Conn. 331, 339–40, 603 A.2d 1147 (1992). In the present case, however, we do not find that the challenged language gave potential jurors preconceived notions about the case.

We conclude that the introduction of the phrases "domestic violence," "family violence," and a "dispute between roommates," was not improper. Language in the protective order concerning "family violence" would be admitted into evidence. The order was titled "protective order—family violence." Under the circumstances of the incidents, we cannot conclude that the use of "family violence" or "domestic violence" was so harmful to the defendant. It was never disputed that the alleged crimes concerned "disputes between roommates." We, therefore, conclude that the defendant has failed to prove that a constitutional violation existed and that he was deprived of a fair trial.

### III

Lastly, the defendant claims that the trial court improperly denied his request for a continuance, thus violating his sixth amendment right to a fair trial. We disagree.

"A reviewing court ordinarily analyzes a denial of a continuance in terms of whether the court has abused its discretion. . . . This is so where the denial is not directly linked to a specific constitutional right. . . . If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of [such right]." *In Re Shaquanna M.*, 61 Conn. App. 592, 601–602, 767 A.2d 155 (2001). "The defendant's burden on appeal is to show that the trial court acted arbitrarily, in light of

the information available at the time of its decision, and thereafter, if an abuse of discretion has been established, that the defendant's ability to defend himself has thereby been demonstrably prejudiced." *State* v. *Hamilton*, 228 Conn. 234, 246, 636 A.2d 760 (1994). Our analysis, then, first considers whether the court abused its discretion in denying the defendant's motion for a continuance. See *State* v. *Godbolt*, 161 Conn. App. 367, 374 n.4, 127 A.3d 1139, cert. denied, 320 Conn. 931, 134 A.3d 621 (2016).

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . .

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . .

"Lastly, we emphasize that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 374–75.

In the present case, the defendant contends that the denial of his request for a continuance was unreasonable. To support this claim, the defendant asserts three arguments: (1) because the court granted the state's request for a continuance earlier during the proceedings, the court should have also granted his request for a continuance; (2) the state did not object to the request for a continuance; and (3) the denial of the continuance greatly impaired the defendant's defense, because Quackenbush was a crucial witness in support of the defendant's claim that he was acting in defense of property. The state counters by asserting that the court properly denied the request for a continuance. We agree with the state.

The following facts are relevant to this issue. On June 13, 2017, the defendant informed the court that his

witness, Quackenbush, would not appear at trial that day because she had a work conflict. In his view, the witness was important, and he orally requested a continuance to the following day. The court denied the defendant's request, reasoning that a continuance would "just [be] delaying this case." The court noted that it "had directed that [the defendant] be prepared to start evidence . . . on Friday the 9th," such that a continuance would disrupt the time frame of the trial. The court noted its concern that a delay might result in the loss of a juror: "[w]e told this jury they would potentially have this case on the 9th but we definitely would give it to them by the 13th and now we're telling them the 15th and . . . there is at least one juror who has work problems." In addition to the potential delay, the court also mentioned the timeliness of the request, stating, "If you had raised this issue at an earlier time . . . the witness was supposed to be here today. . . . So this is not a minor request. The record should reflect I would certainly consider this if it weren't for the fact that defense isn't available the 15th, the state's not available the 16th. But the result of me granting this continuance is more likely forcing this case into next week and I'm potentially losing other jurors." Accordingly, the trial court properly considered the potential delay to the proceeding, the untimeliness of the defendant's request, and the resulting prejudice to the trial management. The trial court's ruling was not arbitrary.

The defendant further alleges that his sixth amendment right to present a complete defense was impaired because Quackenbush was a key witness in support of his claim that he exercised a reasonable degree of force in defense of property. He argues that he notified the court of the importance of Quackenbush's testimony, and that she was present at both altercations. The suggestion regarding the importance of Quackenbush's testimony was not made at the time of the request for a continuance, however, but, rather, was made earlier in the trial during a discussion regarding instructions to the jury. The defendant's attorney stated: "[I]n regards to the evidence about defense of property . . . the plan was that evidence was going to come through Grace Quackenbush, [she] did make the 911 call. I wasn't planning on introducing that, because I was going to elicit her testimony. If she doesn't appear . . . I'm going to call [the 911 dispatcher] in my case-in-chief and introduce her 911 call. . . ."[7] At the time of its ruling on the defendant's request for a continuance, the court stated that "Ms. Quackenbush's . . . her statement . . . has come in through a 911 call."

The defendant, at the time of the ruling, did not provide any additional reasoning for the importance of Quackenbush's testimony nor did he make any representation regarding her specific testimony. The defendant has not persuaded us that his sixth amendment right to a fair trial was violated by the denial of his

request for a continuance. See *State* v. *Godbolt*, supra, 161 Conn. App. 374 n.4.

Because the request for a continuance was made at the last moment, substantial delay was likely to result if the request had been granted, and there was no assurance that the witness would have appeared if the continuance had been granted, the court's ruling was not an abuse of discretion and, accordingly, did not violate the defendant's constitutional right to a fair trial.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victim of family violence, we decline to identify the victim or others through whom the victim's identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2012); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[2] At trial, Cosmos stated his reasoning for arresting the defendant: "[W]ith . . . everything that we observed on the scene, with all the blood, the injuries to [the victim], and the motive that he had, we believed that [the defendant] was the one that should be arrested." Calo testified: "I took the whole scenario and it had a lot to do with credibility and motive. I found that [the defendant] was upset because he found pictures of his wife—he found pictures of [the victim] naked on his wife's phone. So he confronted [the victim] about it. And [the victim] really had no reason to lash out at the defendant."

[3] The defendant failed to appear for a scheduled hearing on August 26, 2016.

[4] Calo testified: "The injuries that he sustained on the 22nd were still there but there . . . were more injuries because there was blood in his mouth . . . . His face seemed more swollen and he showed me a laceration on the inside of his mouth."

[5] In light of our determination regarding the *Boscarino* factors, we need not decide whether the evidence was cross admissible.

[6] With regard to the use of the term "dispute between roommates," each of the three venirepersons who were informed that the parties were roommates indicated that the factual scenario would not affect his or her ability to be impartial. Ultimately, none of the jurors who were informed that the parties were roommates was selected to sit on the panel of jurors. One, however, was selected as an alternate juror.

[7] The referenced 911 call was subsequently introduced into evidence by the state.